IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NUMBER   1:95CV01149

JUDGE: Thomas A. Flannery

DECK TYPE: Civil General    **JURY ACTION**

DATE STAMP: 06/16/95

|  |  |
|---|---|
| ROBERT and LAVERNE WILLIAMS, 1008 Hickory, Roscoe, Texas 79545, WELCHEL and EMMA LONG, Rt. 1, Box 461, Dewey Rose, Georgia 30634, WALTER POWELL Rt. 2, Box 162, Monroe, Louisiana 71202, HENRY HERRERA P. O Box 225, Roscoe, Texas 79545, and SIXTO E. HERRERA, P. O. Box 835, Roscoe, Texas 79545, and all others similarly situated <br><br> Plaintiffs <br><br> v. <br><br> DANIEL R. GLICKMAN, Secretary of Agriculture, 14th & Independence Avenues, S.W., Room 200A, Washington, D.C. 20250 <br><br> Defendant. | COMPLAINT FOR DAMAGES For Violations of Civil Rights (42 U.S.C.§§1981, 1982, 2000d 15 U.S.C §1691 and Fraud;And Attorneys' Fees 42 U.S.C.§1988) <br><br><br> DEMAND FOR JURY  FILED <br><br> JUN 1 6 1995 <br><br> CLERK, U.S. DISTRICT COURT DISTRICT OF COLUMBIA <br><br> JUDGE THOMAS A. FLANNERY |

## CLASS ACTION COMPLAINT

Individual and representative plaintiffs Robert and Laverne Williams, Welchel and Emma Long, Walter Powell, Jim and Grace Bowie, Henry Herrera and Sixto E. Herrera, on behalf of themselves and all other similarly situated, complain against defendant Daniel R. Glickman (hereinafter referred to as "the Secretary") as follows:

### NATURE OF THE CASE

1.   Through a discriminatory course of conduct that has spanned decades, defendant and his predecessors by and through

1

their representatives within the Small Community and Rural Development Department, formerly the Farmers Home Administration ("FmHA"), have developed and maintained a pattern of racial discrimination in the administration of the FmHA direct farm ownership and loan programs within the United States Department of Agriculture ("Department"). The Secretary has violated and continues to violate the United States Constitution's Fifth, Thirteenth, and Fourteenth Amendments and numerous federal statutes, including, but not limited, to 42 U.S.C. §§ 1981, 1982, 2000d, and 15 U.S.C. §1691, in denying the equal participation of plaintiffs, and all others similarly situated, in congressionally mandated farm ownership and loan programs administered by the Department. The Secretary and his predecessors have developed and maintained a system of institutional racism and discrimination against American citizens on account of their race, black and brown, and national origins, African and Mexican. The Secretary, through his Office of Civil Rights Enforcement ("OCRE") and the FmHA Equal Opportunity Office ("EO"), has acknowledged this pattern of racial discrimination and the violations of numerous federal statutes and FmHA program regulations prohibiting such discrimination, but he refuses to remedy the violation of United States law and public policy or to pay compensatory damages and attorneys fees to plaintiffs, and all others similarly situated, claiming, in part, sovereign immunity as a legal bar. The Secretary's intentional and continuing discriminatory conduct has

resulted in a disproportionate loss of land, economic ruin and emotional stress among minority farmers as compared to white farmers. The plaintiffs, and all others similarly situated, seek damages for their economic losses and emotional distress, as well as attorneys' fees for prosecution of this action.

### JURISDICTION AND VENUE

2.   Jurisdiction for this action arises under 28 U.S.C. §§ 1331 and 1343.

3.   Venue is proper pursuant to 28 U.S.C. §1391(e) because defendant resides in this district.

### PARTIES

4.   Now into this Court, through the undersigned counsel, come (a) Robert and Laverne Williams of Roscoe, Texas, (b) Welchel and Emma Long of Dewey Rose, Georgia, (c) Walter Powell of Monroe, Louisiana, (d) Jim and Grace Bowie of Colfax, Louisiana, (e) Henry Herrera of Roscoe, Texas, and (f) Sixto E. Herrera of Roscoe, Texas, all of whom are persons of age of majority and further appear on behalf of those individuals similarly situated.

5.   Plaintiffs and proposed class representatives Robert and Laverne Williams, farmers by trade, have endured approximately seven (7) years of continuous racial and national origin discrimination, because of their black race and African national origin, by the officials of the FmHA. The FmHA's discriminatory conduct is continuing. The FmHA's continuing discriminatory conduct has caused and continues to cause plaintiffs injury,

3

including reasonable and necessary medical expense, loss of income, mental anguish and emotional suffering, humiliation, frustration, other economic, physical and property losses, and damage to their business reputation in the community. Plaintiffs previously filed an individual civil action styled Robert and LaVerne Williams v. Michael Espy, and numbered Civil Action No. 94-523-TAF.

6.    Plaintiffs and proposed class representatives Welchel and Emma Long, farmers by trade, have endured approximately twenty (20) years of continuous racial and national origin discrimination, because of their black race and African national origin, by the officials of the FmHA.   The FmHA's discriminatory conduct is continuing.   The FmHA's continuing discriminatory conduct has caused and continues to cause plaintiffs injury, including costs of medical treatment, loss of income, mental anguish and emotional suffering, humiliation, frustration, other economic, physical and property losses, and damage to their business reputation in the community.   Plaintiffs previously filed an individual civil action styled Welchel Long and Emma Long v. Michael Espy, and numbered Civil Action No. 94-024-WBB.

7.    Plaintiff   and   proposed   class   representative   Walter Powell, a farmer by trade, endured approximately five (5) years of racial and national origin discrimination, because of his black race and African national origin, by the officials of the FmHA. The   FmHA's   discriminatory   conduct   caused   plaintiff   injury, including loss of income, mental anguish and emotional suffering,

4

/u3/gloria/client/farmers/classact.comp

humiliation, frustration, other economic, physical and property losses and injury to his business reputation in his community. Plaintiff previously filed an individual civil action styled <u>Walter Powell v. Michael Espy</u>, and numbered Civil Action No. 94-026-WBB.

8.    Plaintiffs and proposed class representatives Jim and Grace Bowie, farmers by trade, have endured approximately thirteen (13) years of continuous racial and national origin discrimination because of their black race and African origin by the officials of FmHA. The FmHA's discriminatory conduct is continuing. The FmHA's continuing discriminatory conduct has caused and continues to cause plaintiffs injury, including reasonable and necessary medical expense, loss of income, mental anguish and emotional suffering, humiliation, frustration, other economic, physical and property losses and damage to their business reputation in the community. Plaintiffs previously filed an individual civil action styled <u>Jim Bowie and Grace Bowie v. Michael Espy</u>, and numbered Civil Action No. 94-025-WBB.

9.    Plaintiff and proposed class representative Henry Herrera, a farmer by trade, has endured approximately ten (10) years of national origin and racial/color discrimination, because of his Mexican/Hispanic origin and brown color, by the officials of the FmHA. The FmHA's discriminatory conduct caused plaintiff's injury, including loss of income, mental anguish and emotional suffering, humiliation, frustration and other economic, physical and property losses and injury to business reputation in his

5

community.

10. Plaintiff and proposed class representative Sixto E. Herrera, a farmer by trade, has endured approximately ten (10) years of national origin and racial/color discrimination, because of his Mexican/Hispanic origin and brown color, by the officials of the FmHA. The FmHA's discriminatory conduct caused plaintiff's injury, including loss of income, mental anguish and emotional suffering, humiliation, frustration and other economic, physical and property losses and injury to business reputation in his community.

11. Defendant Daniel R. Glickman is the United States Secretary of Agriculture. The Department of Agriculture is in the executive branch of the government of the United States of America. Daniel R. Glickman was appointed Secretary of Agriculture by the President of the United States, William Jefferson Clinton, and his appointment was confirmed by the United States Senate.

12. The Secretary is sued in his official capacity only.

### BACKGROUND

13. The Secretary administers the FmHA, an agency within the Department of Agriculture. The FmHA is the credit agency for agriculture in the United States Department of Agriculture and is authorized to make various types of loans to farmers who, generally, are unable to obtain credit from commercial sources, as

/u3/gloria/client/farmers/classact.comp

provided in the Consolidated Farm and Rural Development Act, 7 U.S.C. §1921 et seq. The FmHA implements the Consolidated Farm and Rural Act pursuant to the Code of Federal Regulations, according to 7 C.F.R. §1900-2000. Loans can be provided directly by FmHA or can come from commercial sources and be guaranteed by FmHA. The terms and conditions of such loans vary with the particular circumstances of the borrower, but the loans are made upon the borrower's full personal liability and typically are secured by chattels, crops and/or real estate.

14. The types of loans made by FmHA include "farm ownership" ("FO") loans, which are made for such purposes as obtaining, enlarging or improving farm property. "Operating" loans are intended to provide credit necessary for farmers to conduct successful operations. In addition, delinquent borrowers whose FmHA loan accounts have not been accelerated can apply for "annual production" loans or "continuing assistance" loans when the borrowers have acted in good faith, but have been unable to repay their loans due to, e.g., illness, injury, or crop disaster. Such loans may be processed in conjunction with the consideration of possible "primary loan servicing." Primary loan servicing may encompass such options as debt restructuring, deferral, or write-down. Primary loan servicing considers the borrowers complete financial situation. For a continuing assistance loan, however, the borrower need only demonstrate that taxes, living expenses, farm operating expenses, and the continuing assistance and other

7

production loans can be repaid (not that all of the borrower's debt can be serviced).

15. FmHA also makes emergency disaster ("EM") loans. Such loans are made to cover losses so that a farmer is able to resume operations after an officially declared disaster. Related economic emergency ("EO") loans allow farmers to continue operations during economic emergencies, such as when a wide disparity exists between crop prices and costs of production.

16. As part of the application process for FmHA loans, an applicant is required to complete a Farm and Home Plan ("FHP"). The FmHA officials are required to assist applicants in the completion of the FHP and loan application. The FHP recites the applicant's farming record, financial condition, and a plan for use of the loan proceeds. The eligibility requirements for FmHA loans typically provide that the borrower have the abilities necessary to assure a reasonable prospect of success based on the FHP.

17. FmHA operates its loan programs through its state, district and county offices. The FmHA county supervisor must submit properly completed loan applications to a county committee, made up of three local farmers, for review and recommendation. If the county committee acts favorably on the application, the application is returned to the county supervisor for final approval or disapproval.

18. Although the racial and national origin discriminatory policies are developed and implemented in Washington, D.C. in the

/u3/gloria/client/farmers/classact.comp

seat of government, it is at the county committee, county supervisor and state levels where the discriminatory practices occur against minority farmers and preferential treatment is afforded white farmers as more fully described below.

19. The implementing federal regulations of the above-delineated programs contain statements, pursuant to the previously delineated federal statutes, prohibiting discrimination in the administration of the farm ownership and loan programs. The implementing regulations also contain dual procedures by which program participants can file complaints of discrimination. Complainants may file complaints with the FmHA EO Office. The EO office is a division with FmHA. Complainants may also file complaints with the Offices of Civil Rights Enforcement ("OCRE"), an agency within the Department of Agriculture. In addition, the complainant may file a discrimination complaint with both offices, simultaneously.

20. The FmHA EO officers assigned to state FmHA offices conduct the investigations, sometimes concurrently with the OCRE staff, when a complaint has been filed with both offices, and issues their investigative findings to OCRE. The OCRE investigates the complaints and issues formal findings to the Secretary and the complainant. In cases where the OCRE issues findings confirming discrimination, the Director of OCRE, pursuant to the Code of Federal Regulations, orders remedial actions on behalf of the complainant and notifies the complainant of the right to sue the

9

Secretary.

21.   The plaintiffs and others similarly situated have availed themselves not only of the above delineated farm ownership and loan programs but also of the elaborate, essentially ineffective, equal opportunity and civil rights enforcement programs and complaint procedures.   They have done so in detrimental reliance on the Secretary to administer such programs in accordance with federal law and the United States public policy against racial and national origin discrimination.   To the contrary, the Secretary has failed to implement procedures to prevent discrimination, has failed to remedy past discrimination, and has ratified past discrimination by his current policies, procedures and practices.

22.   On information and belief, the FmHA EO is presently investigating approximately three hundred fifty (350) complaints of discrimination against the FmHA, most of which have been filed by African and Mexican American farmer program participants.

23.   On information and belief, the OCRE is currently investigating approximately three hundred (300) discrimination complaints against the FmHA, its state directors and county supervisors. In numerous cases, the OCRE, as representative of the Secretary, has officially confirmed racial discrimination and violations of the previously-stated federal statutes and FmHA regulations by the FmHA officials.

24.   On information and belief, the Secretary, through his Office of General Counsel, has refused to accept the OCRE findings

10

/u3/gloria/client/farmers/classact.comp

and conclusions and to implement the remedial actions ordered by the OCRE director, all in furtherance of the institutionalized discriminatory conduct practiced and ratified in the Department of Agriculture. Hence, the plaintiffs and all others similarly situated institute this class action.

## Class Action Allegations

25. Plaintiffs bring this class action on behalf of themselves and all others similarly situated for the purpose of asserting the claims alleged in this complaint on a common basis.

26. The proposed class is defined as all persons who in the past twenty (20) years (a) have or continue to have a business and/or contractual relationship with the FmHA; (b) have participated in the FmHA's direct farm ownership and loan programs; (c) have been subjected to any form of discrimination prohibited by federal law, and (d) who have suffered economic and emotional distress damages as a result of the Secretary's discriminatory conduct.

## Specific Subclass Definitions

27. In addition, to the general class definition in paragraph 26 above, each subclass is defined as follows:

(a) class I consists of all individuals who have filed a discrimination complaint with any agency of the United

11

States government, including the OCRE and EO, and who received from any agency official findings confirming discriminatory conduct by the FmHA officials, before the date the class is certified; and

(b)    class II consists of all individuals who have filed a discrimination complaint with any agency of the United States government, including the OCRE and EO, and did not receive formal findings from any agency, before the date the class is certified.

28.    This action is brought and may properly be maintained as a class action pursuant to Rules 23(a)(1)-(4) and, as appropriate, rules 23(b)(1), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.    This action satisfies the numerosity, commonality, typicality, adequacy and predominance and superiority requirements of those provisions.

29.    <u>Numerosity of the class.    Fed.R.Civ.P. 23(a)(1)</u>.    The proposed class and its subclasses are so numerous that individual joinder of all its members is impracticable.    OCRE and EO have found that 35 or more families or individuals have been victims of racial/color or national origin discrimination by the FmHA.    OCRE is investigating over 300 complaints of such discrimination.    EO is investigating several hundred complaints of such discrimination. Hundreds of class members, plaintiffs believe, have been discriminated against by FmHA officials, such discrimination being the direct cause of the program participants' injuries, including,

12

/u3/gloria/client/farmers/classact.comp

but not limited to, land loss, financial ruin, reasonable and
necessary medical expenses, mental anguish, emotional distress and
damage to business reputation.  Upon class certification, class
members may be given legal notice of the pendency of this class
action by direct mail from plaintiffs, or from defendant by direct
mail through the Department of Agriculture, which maintains and has
the current mailing address of each class member.

    30.  Existence and Predominance of Common Questions of Law and
Fact.  Fed. R. Civ. P. 23(a) and 23(b)(3).  Common questions of law
and fact exist as to all members of the class and such questions
predominate over any questions affecting only individual members of
the class.  These common legal and factual questions arise from one
issue which does not vary from class member to class member and
which may be determined without reference to the individual
circumstances of any particular class member.  The Secretary
continues violating the federal statutes prohibiting discrimination
in the administration of the FmHA farm ownership and loan programs.
The common legal and factual questions include, but are not limited
to, the following:

    (a)  whether the practices and policies by the FmHA are
         discriminatory against the class on the basis of
         race/color and/or national origin;

    (b)  whether the Secretary ratified the policies and practices
         of such discrimination practiced by his predecessors;

    (c)  whether the class is entitled to protection from racial

13

discrimination and/or national origin discrimination in the administration of the FmHA program by the Secretary pursuant to the United States Constitution, Amendments V, XIII and/or XIV;

(d) whether the Secretary has knowingly and intentionally interfered with the class' rights, if any, protected by the United States Constitution, Amendments V, XIII, and/or XIV;

(e) whether the Secretary deliberately and/or recklessly denied the class equal protection of the laws in the awarding of financial assistance in direct loan and farmer participant programs of the FmHA in violation of 42 U.S.C. §1981;

(f) whether the Secretary deliberately and/or recklessly denied the class the same right as is enjoyed by white citizens to inherit, purchase, lease, sell, hold, and convey real and personal property in violation of 42 U.S.C. §1982;

(g) whether the Secretary deliberately and/or recklessly discriminated against the class by denying them credit on the basis of their black and/or brown race and/or Mexican/Hispanic and/or African national origins in violation of 15 U.S.C. §1691, et seq;

(h) whether the Secretary knowingly and intentionally denied the class benefits and participation in the FmHA based

14

solely on their race, black and/or brown and/or Mexican/Hispanic or African national origins in violation of Title VI of the Civil Rights Act of 1964, as amended §42 U.S.C. 2000d, <u>et seq</u>;

(i)  whether the United States has waived sovereign immunity for claims of racial/color and/or national origin discrimination pursuant to the United States Constitution, Amendments V, XIII, and/or XIV, the post-Reconstruction Civil Rights Act, Title VI of the Civil Rights Act of 1964, as amended, and/or the Equal Credit Opportunity Act of 1974;

(j)  whether the class is threatened with irreparable harm, so that they are entitled to injunctive and/or other equitable relief;

(k)  whether the class is entitled to a declaratory judgment, pursuant to the U.S. Declaratory Judgment Act, that the policies and/or practices of the Secretary subject the class to unlawful discrimination on the basis of color and/or national origin;

(l)  whether the class is entitled to recover compensatory damages, and, if so, the nature and amount of such damages, and

(m)  whether the class is entitled to recover reasonable attorneys fees and expenses.

31.  <u>Typicality of Claims.   Fed. R. Civ. P. 23(a)(3).</u>

15

/u3/gloria/client/farmers/classact.comp

Plaintiffs' individual claims are typical claims of the members of the class, all of whom have applied for and been denied credit on the basis of their black or brown race and African or Mexican/Hispanic national origin, and equal participation in the congressionally mandated farm ownership and loan programs administered by the FmHA. The class has sustained and/or will continue to sustain damages and injuries and are facing irreparable harm arising out of the Secretary's common course of continuing discriminatory conduct.

32. <u>Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).</u> Plaintiffs are adequate representatives of the class because they are members of the class and their interests do not conflict with the interests of the members of the class they seek to represent. Plaintiffs have retained counsel competent and experienced in the prosecution of class actions alleging race/color and/or national origin discrimination. Plaintiffs intend to prosecute this action vigorously for the benefit of the class, and counsel has the resources to prosecute this action to conclusion. The interests of the members of the class will be fairly and adequately protected by the class representatives and their counsel.

33. <u>Maintainability of Class. Fed. R. Civ. P. 23(b)(2).</u> The various claims asserted in this action may be certified pursuant to Rule 23(b)(2)of the Federal Rules of Civil Procedure because the Secretary has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final

16

/u3/gloria/client/farmers/classact.comp

injunctive relief or corresponding declaratory relief with respect to the class as a whole.

34.  <u>Superiority.  Fed. R. Civ. P. 23(b)(3).</u>  A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of all of the class members' claims is impracticable.  Even if any class members could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts to allow separate lawsuits for each class member, in which individual litigation of the facts of perhaps hundreds of cases would proceed.  Individual litigation further presents a potential for inconsistent or contradictory judgments.  Individual litigation increases the delay and expense to all parties and the court system in resolving the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economics of scale, and comprehensive supervision by a single court.


### FACTUAL ALLEGATIONS


35.  In the administration of the FmHA farm ownership and loan programs previously delineated, the Secretary, through the FmHA and its state, district and county officers, has discriminated against the plaintiffs and others similarly situated by performing one or all of the acts below alleged.

17

## A. <u>EQUAL ACCESS AT INITIAL ENTRANCE</u>
## <u>TO FARMER PROGRAMS</u>

36.  Plaintiffs and others similarly situated have been and continue to be, routinely discouraged by FmHA state, district, county and local staff from participating in the various FmHA farm ownership and loan programs as compared to white farmers who are encouraged to participate and are given preferential treatment in such programs.

37.  Plaintiffs and others similarly situated have repeatedly been refused and denied access to the application documents necessary to apply for participation in the FmHA farm ownership and loan programs.  The refusals to provide the class the applications are manifested by FmHA staff through tactics that range from subtle, verbal discouragement to the excuse that the applications are not available.  In some instances, the FmHA staff simply refuses to provide members of the class with application documents. On information and belief, white farmers are not refused the applications.

38.  FmHA officials have perpetrated their discriminatory conduct by discouragement and refusal to provide the class members the applications in spite of the congressional mandate for outreach to socially disadvantaged farmers and ranchers, pursuant to 7 U.S.C. §2279.

39.  Plaintiffs and others similarly situated who received

18

/u3/gloria/client/farmers/classact.comp

loan application documents were, and continue to be, routinely denied assistance in completing the numerous and complicated forms in contravention of FmHA program regulations. FmHA's staff routinely deny such assistance in furtherance of the FmHA's discriminatory intent to deny the class equal participation in the farmer programs. White farmers are given the assistance necessary to complete the application forms, such assistance being preferentially and timely provided.

40. Where FmHA officials provide assistance to the class in completing the various loan documents, such officials routinely input financial date invidiously designed to insure a non-favorable review of the class' applications.  In some instances, FmHA officials have insisted class members sign blank applications to their detriment. On information and belief, blatantly false financial data is placed on the forms and submitted to the review committees with the intent to sabotage the class' opportunity to be approved for funding.

### B.  **NON-EQUAL TREATMENT**
### **IN PROCESSING LOAN DOCUMENTS**

41. FmHA staff, with discriminatory intent, routinely delay processing the class' loan applications, and in some instances such delays result in the class members not timely commencing their farming operations.  Untimely commencement of farming operations

due to funding delays results in inability to produce crops and therefore, imminent financial failure.

42.  Disparity generally exists between the loan processing time for the class in comparison to the loan processing time for white farmer program participants.  The class was and continues to be treated less favorably during the loan application process for no articulable reason other than to impede their ability to receive an equal share, by percentage, of the allocated loan funds and to timely begin their farming operations.  The FmHA discriminatory conduct in timely processing the class' loan applications contravenes federal law and violates FmHA Regulation 1910A Receiving and Processing Applications.

43.  FmHA officials, with discriminatory intent, generally have denied the class equal participation in the debt restructuring and debt write-down process in contravention of its own regulations as compared to white farmers who are routinely approved for debt restructuring and debt write-down.  The FmHA writes down debts in the hundreds of millions of dollars attributable to white farmers, such write downs being disproportionate to debt write downs of the class.

## C.  DENIAL OF LOAN FUNDS
### INADEQUATE LOANS

44.  The class' farm ownership, operating, annual production,

/u3/gloria/client/farmers/classact.comp

continuing assistance, emergency disaster and related economic emergency loan applications were rejected by FmHA continuously between 1975 and the date this class action is filed for rationales that were and are not in accordance with FmHA program regulations and federal law despite the fact that class members herein consist of a protected class that (1) sought equal participation in the FmHA farmer programs and credit from the FmHA, (2) who were qualified and (3) who were rejected on the basis of race and national origin. The rationales advanced by FmHA officials for the rejections were and are merely pretextual for the Secretary's discriminatory conduct.

45. White farmers, conversely, have been extended unfettered participation in the FmHA farm programs and have been extended credit. The FmHA's actions have resulted, intentionally, in disparate treatment of and a disparate impact on the class.

46. Even though members of the class have qualified for the loans, FmHA officials routinely and intentionally developed inadequate farm and home plans (FHP) that showed that the class members were unable to repay the loans. Despite the farm and home plans inadequacies and based on the fraudulent farm and home plans, FmHA officials made inadequate loans, such loans having been made in FmHA's attempt to satisfy its minority recruitment requirements without regard to the economic hardship the FmHA officials knew would be placed on the members of the class.

47. In furtherance of its discriminatory intent and policy to

21

make itself appear as though it were extending equal participation
of the class in FmHA's farmer programs, FmHA officials financed the
purchase of land for the class for an amount that far exceeded the
appraised value of the land.  The class' purchase of the farmland
at the inflated prices, prices usually determined by the FmHA
officials themselves, placed the class at an economic disadvantage
and saddled them with debt that they would probably never be able
to repay.

48.  The class was unaware that FmHA actions in granting the
inadequate land and equipment and operating loans were not intended
to provide them with a reasonable and equal opportunity to succeed,
but rather to "set them up" for failure, economic ruin and
foreclosure, while at the same time giving the appearance that the
FmHA minority recruitment program was successful.

D. **DENIAL OF AND INADEQUATE**

**MANAGEMENT ASSISTANCE**

49.  The FmHA did not make good faith efforts to provide the
class with adequate technical guidance and management supervision
pursuant to FmHA Regulation 1924B <u>Management Advice to Individual
Borrowers and Applicants</u>.  In addition, the FmHA did not provide
adequate financial management supervision to protect the
government's interest or to provide plaintiffs with an opportunity
to develop successful farming operations.  FmHA officials were

22

aware that the class needed technical guidance and management supervision and assistance, but refused to provide it.

50.  Where FmHA provided management assistance, FmHA officials restricted, in bad faith, these communications with class members and visited the class members farming operations less frequently than they visited the farming operations of white farmers.

### E. <u>REPRISAL FOR COMPLAINTS OF</u>
### <u>DISCRIMINATION AND FILING APPEALS</u>

51.  As a result of the FmHA's discriminatory actions above described, many of the class members expressed concern, verbally or by formal notice, to FmHA officials that they believed they were being victimized and discriminated against.  Once class members expressed their concern, FmHA officials, using FmHA Regulation 2012b, <u>Discrimination Complaints</u>, regularly ceased any and all activity on the class loan and management assistance requests. This action constituted retaliation and reprisal and further caused economic injuries to the class.  There exists a direct causal connection between filing of the discrimination complaints by the class members and FmHA's refusal to service the class' accounts subsequent to the filing of the complaints.

52.  Many of the class members availed themselves of the appeals process through the FmHA's National Appeals Staff.  FmHA officials at the state and county levels often submitted false and

23

misleading information to national appeals officers to insure that
their discriminatorily based adverse decisions would be upheld by
the national appeals office.    As a result, a disproportionate
number of the class' appeals are denied in comparison to white
farmers who appeal adverse decisions.  In some cases, the national
appeals staff has overturned the adverse actions of the class, but
the FmHA state and county officials have refused to implement the
orders of the appeals staff.

### F. **EQUITABLE ESTOPPEL**

### **TOLLING OF THE STATUTE OF LIMITATIONS**

53.  The Secretary is estopped, on the theory of equitable
estoppel, from asserting the statute of limitations with regard to
the entire class and individual class members since he committed
misrepresentation and misleading conduct by encouraging the class
to file complaints with EO and OCRE knowing that the process was
designed and administered to yield no affirmative benefit and that,
in  fact,  the  classes  availing  themselves  of  the  complaint
procedures would prejudice themselves by being misled into not
timely filing civil actions.

54.  The class' claims for relief fall within the applicable
statute of limitations.  Both the continuous violations doctrine
and the doctrine of ripeness and exhaustion for judicial review
toll  the  statute  of  limitations  since  the  OE  and  OCRE  are

investigating hundreds of claims filed by the class members, such class members being unaware and not notified by the Secretary of their right to file suit.

55. Moreover, the discrimination that the class has encountered by the FmHA has been one of a continuing nature which would prevent the statute of limitations from running. The discrimination that the class alleges here is not the result of a single violation which has a later effect.

## FIRST CLAIM FOR RELIEF

56. The allegations contained in Paragraphs 1 through 55 are incorporated by reference the same as if fully set forth herein verbatim.

57. U.S. Constitution, Amendments V, VIII, XIV. The Secretary knowingly and intentionally denied, abridged, segregated, withheld, limited, and otherwise interfered with the class' constitutional rights by discriminating against the class on the basis of their African-American and Mexican-American race contrary to the Fifth, Thirteenth, and Fourteenth Amendments to the Constitution of the United States.

58. Sovereign immunity has been waived for these claims, and a federal right of action for damages arises directly under the

/u3/gloria/client/farmers/classact.comp

United States Constitution. The Amendments subject any federal agency, including the Department of Agriculture, to discrimination prohibitions.

## SECOND CLAIM FOR RELIEF

59. The allegations contained in Paragraphs 1 through 55 are incorporated by reference the same as if fully set forth herein verbatim.

60. 42 U.S.C.§1981. The Secretary deliberately or recklessly denied the class equal protection of all laws and proceedings for security of person and property as is enjoyed by white citizens, all to the class' damages as herein alleged. Defendant knowingly and intentionally violated the practices and standards set for awarding financial assistance in direct loan and participant programs in the Farmers Home Administration, administered by the Department of Agriculture. Defendant, thereby, discriminated against the class on the basis of race, black and/or brown, and on the basis of national origin, African and/or Mexican.

61. Sovereign immunity under 42 U.S.C.§1981 is waived because the statute itself prevents racial discrimination regarding the making and enforcing of contracts and in regard to the sale, lease, and use of property.

26

## THIRD CLAIM FOR RELIEF

62.  The allegations contained in Paragraphs 1 through 55 are incorporated by reference the same as if fully set forth herein verbatim.

63. 42 U.S.C. §1982.  The Secretary deliberately or recklessly denied the class the same right as is enjoyed by white citizens to inherit, purchase, lease, sell, hold, and convey real and personal property.  Defendant knowingly and intentionally violated the practices and standards set for awarding financial assistance and, as a result, denied property rights to the class. Defendant, thereby, discriminated against the class members on the basis of their race, black and/or brown, and national origin, African and/or Mexican.

64.  Sovereign immunity under 42 U.S.C.§1982 is waived because the statute itself prevents racial discrimination regarding the making and enforcing of contracts and in regard to the sale, lease, and use of property.

## FOURTH CLAIM FOR RELIEF

65.  The allegations contained in Paragraphs 1 through 55 are incorporated by reference the same as if fully set forth herein verbatim.

66. 15 U.S.C. §1691.  The Secretary deliberately or

27

/u3/gloria/client/farmers/classact.comp

recklessly discriminated against the class by denying them credit on the basis of their black and/or brown race in violation of 15 U.S.C. §1691. FmHA's untimely processing and denial of the class' applications for operating assistance, refusal to process the applications for debt restructuring and capital expenditures, and refusal to accept the applications for debt restructuring, capital expenditures, and operating funds were discriminatory and were based on race and/or national origin. The violations are continuing.

67.  Sovereign immunity has been expressly waived for claims under the Equal Credit Opportunity Act of 1974.


## FIFTH CLAIM FOR RELIEF


68.  The allegations contained in Paragraphs 1 through 55 are incorporated by reference the same as if fully set forth herein verbatim.

69.  <u>42 U.S.C. §2000d et.seq</u>.  Defendant knowingly and intentionally denied the class benefits and participation in the FmHA, a program receiving federal financial assistance, based solely on their black and/or brown race and African and/or Mexican origin, in contravention of 42 U.S.C. §2000d.

70.  To the extent the United States government, by and through the Department of Agriculture, has directly and intentionally participated in discriminatory conduct, it remains

28

liable and cannot rely upon the doctrine of sovereign immunity.

### SIXTH CLAIM FOR RELIEF

71.  The allegations contained in Paragraphs 1 through 55 are incorporated by reference the same as if fully set forth herein verbatim.

72.  Numerous class members, Subclass I, had filed discrimination complaints against FmHA officials and at the time of the filing of this class action received findings in which OCRE concluded that they each had a prima facie case for race and national origin discrimination against the Secretary.  In each case, the Director of OCRE, pursuant to Agriculture Department regulations, ordered remedial actions against the FmHA in favor of the class member.  In furtherance of his discriminatory intent, the Secretary has refused to implement the ordered remedial actions and to compensate the injured subclass member using as a false excuse that the law provides no monetary remedy to an injured class member.

73.  In conjunction with the formal findings confirming that subclass members have been the victims of discrimination, the OCRE issues a letter of right to sue the Secretary for damages.  Upon filing such lawsuits, subclass I class members are informed by the Secretary's legal counsel, attorneys at the Department of Agriculture Office of the General Counsel, and the U. S. Department

of Justice, Civil Division, that their cases are barred by the applicable statute of limitations and sovereign immunity.

74. The Secretary has intentionally and with discriminatory intent failed to inform class members, Subclass I and II, of their right to sue at the time they file their discrimination complaints with FmHA OE and/or OCRE and that their filing of such complaints did not toll the statute of limitations. The Secretary's failure to inform subclasses I and II, of these facts was and is designed to insure that regardless of the OCRE findings, which in most instances takes as long as two years or more, he, through his attorneys, would be able to raise the limitations defense as a bar to the recovery of compensatory damages and attorneys' fees.

75. The Secretary, with discriminatory intent, failed and continues to fail to inform the entire class that the EO and OCRE investigation process, by his own admission, is viewed by him as merely "a mechanism for the Department of Agriculture to police itself internally and correct any discriminatory action that might arise." The Secretary, to the contrary, encourages the entire class to employ the OE and OCRE complaint process as a means, other than through the judicial process, to seek relief and remedy from his discriminatory actions and the disparate, injurious impact such actions have had on the class.

76. The Secretary's actions constitute a material misrepresentation upon which the class has relied and still relies to their detriment. The Secretary's conduct and the OE and/or OCRE

/u3/gloria/client/farmers/classact.comp

procedures constitute a fraud against the class and deny the class their constitutional and statutory access to the judicial system. The Secretary intends for the class to rely that, if they follow the OE and/or OCRE procedures, they will be made whole and fully compensated if discrimination is found.  The Secretary knows that the class will rely on the fraudulent OE and/or OCRE procedures to their detriment because he knows that the class will rely on the integrity and honesty of the representatives of the government, also to their detriment.  The Secretary's actions are a proximate cause of the class' injuries.

## PRAYER FOR RELIEF

Wherefore, plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against defendant, as follows:

(1)  For an order certifying the plaintiff class and any appropriate subclasses thereof under the pertinent provisions of FED.R.CIV.P. 23, and appointing plaintiffs and their counsel to represent the class;

(2)  For equitable relief;

(3)  For injunctive relief;

(4)  For a declaratory judgment;

(4)  For compensatory damages;

(5)  For attorneys' fees and expenses

(6)  For pre-judgment interest;

/u3/gloria/client/farmers/classact.comp

(7)  For costs of court, and

(8)  For such other and further relief as this court may deem
     just and proper.

                              Respectfully submitted,

                              SPEISER, KRAUSE, MADOLE
                                   & LEAR
                              1216 16TH Street, N. W.
                              Washington, D.C. 20036
                              Telephone:  (202) 223-8501
                              Facsimile:  (202) 223-7253

                              By: _____
                                   Rina Goodman
                                   District of Columbia
                                   Bar No. 435494


                              SPEISER, KRAUSE, MADOLE
                                   & MENDELSOHN, JACKSON
                              2600 NationsBank Plaza
                              300 Convent Street
                              San Antonio, Texas 78205
                              Telephone:  (210) 222-2271
                              Facsimile:  (210) 230-8914

                              By: _____
                                   Les Mendelsohn
                                   Texas State Bar No. 13931000

                              By: _____
                                   James W. Myart, Jr.
                                   Texas State Bar No. 14755950

                              ATTORNEYS FOR PLAINTIFFS

                                       32